**KAITLIN S. VERDURA #025802**
**VERDURA LAW GROUP PLLC**
PO Box 45345
Phoenix, AZ 85064
(602) 421-0515 phone
(877) 257-8895 fax
*e-mail: kv@verduralaw.com*

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Humberto Magana,<br>Defendant. | Case No. CR-22-0150-2-PHX-DLR<br><br>**DEFENDANT'S OBJECTION TO DRAFT PRESENTENCE REPORT**<br><br>**(Assigned to the Honorable Judge Douglas L. Rayes)** |

Defendant, Humberto Magana, hereby submits the following objections to the draft presentence report (hereinafter "PSR") pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure:

**<u>Objection 1</u>: Page 9, paragraph 25 (Specific Offense Characteristic Enhancement pursuant to USSG § 2K2.1(b)(1)(B)).**

**<u>Objection 2</u>: Page 6, paragraph 12 (Snapchat photo of individual alleged to be the defendant holding a firearm).**

**Objection 3: Page 6, paragraphs 13&18 (Execution of search warrant at defendant's place of residence on March 10, 2021).**

Mr. Magana specifically objects to the four-level enhancement applied to his guideline calculation in paragraph 25. According to the PSR writer, this enhancement was based, in part, upon weapons found during the execution of a home search on March 10, 2021, as well the depiction of an individual believed to be Mr. Magana holding an item

believed to be a functioning firearm that was posted on Snapchat on January 11, 2022. (PSR ¶¶ 13&18.) According to the PSR, a total of eleven (11) firearms were attributed to Mr. Magana as relevant conduct in this case. Of these eleven (11) firearms, only two (2) were directly related to the straw purchase to which he pled guilty. The additional nine (9) firearms attributed to Mr. Magana form the basis of this objection.

January, 2022, Snapchat Photo:

To begin, according to the PSR, Mr. Magana was identified as an individual holding a firearm in a Snapchat photo that was posted on January 11, 2022, to an account with the user name *El Makabelico*[1]. However, agents identified Mr. Magana's Snapchat user name as *Muneco*. (*See* Bates pg. 219.) Thus, it does not appear that this photo was posted to Mr. Humberto's account and it is unknown who posted the actual photo. Furthermore, the individual in question is unidentifiable because his face is covered by an emoji. He is also surrounded by other people as it is a group photo. Therefore, the image could depict any number of individuals. There is nothing distinctive about the individual depicted in the photo that would definitively identify him as Mr. Magana, such as a tattoo. (*See* exhibit 1.[2])

Mr. Humberto's codefendant, Mr. Varela, was questioned about the photo and identified Mr. Magana as the individual whose face was covered by the emoji, but nothing supports the position that Mr. Varela is a reliable source of information. He is a charged codefendant in this matter and was allegedly involved in both weapons offenses and drug trafficking; therefore, he may have ulterior motives and/or reason(s) to lie. Moreover, there is no way to verify whether the weapon depicted in the photo is real or fake because it's a photo.

Mr. Varela was shown a second photo of the weapons impounded during the execution of the search warrant on March 10, 2021, discussed below. Upon review of the second photo, he reported that one of the impounded weapons depicted in the second photo provided by the police was the same weapon depicted in the first Snapchat photo. However,

[1] It appears that this photo may have been posted on January 9, 2022, as noted on the photo itself. This may be a typographical error in the PSR.

[2] The faces of the other individual depicted in Exhibit 1 have been redacted. An original copy will be provided to the court for better clarity.

Mr. Varela was not present during the execution of the search warrant and did not have an opportunity to inspect those weapons. Therefore, although he stated that the weapons depicted in each of the photos were the same, his opinion was based purely on speculation. Coincidentally, the weapon depicted in the second photo was impounded in 2021, long before the first Snapchat photo was posted in 2022. Though it's possible that the Snapchat photo was taken prior to March of 2021 and posted only later posted in 2022, it casts at least some doubt as to the accuracy of Mr. Varela's statements, even if he acted in good faith when rendering his opinion. It should also be noted that if these were the same weapon, then they were double-counted in the guideline calculation.

March, 2021, Search Warrant:

Next, on March 10, 2021, Phoenix police executed a search warrant at Mr. Magana's residence. Mr. Magana was only 18 at the time, not the owner of the home, and living with multiple other individuals. According to the police report, at the time the search warrant was executed, "[m]ultiple occupants were found at the residence." (*See* Phoenix DR2021-383271, pg. 36-37.) Mr. Magana was not present and had already been arrested at another location just prior to execution of the search warrant. In total, though not entirely clear in the police report, it appears that seven (7) individuals were present when the police executed the search warrant and an eighth individual was at work. (*Id.* at pg. 37.) Two of those individuals immediately walked off the premises but later returned to speak to the police. (*Id.* at pg. 46.) According to the police report:

> Upon execution of the search warrant, the following items were located:
> In the bedroom next to his was the Victrex / Beretta .408 Chey caliber rifle in a black case. In a ford explorer parked in the drive, the key of which was on the key ring recovered from Humberto, investigators recovered spent shell casings, ammunition, a micro Ronin Glock handgun accessory, a Glock handgun "lower", a SKS rifle, a ar-15 rifle and a .45 caliber rifle. (*Id.* at pg. 46.)

Though Mr. Magana was in possession of the key to Ford Explorer upon his arrest, he was not arrested in the Ford Explorer. Instead, he was driving a Honda Accord. No weapons were found inside the Honda he was driving, but a handgun was found on his person upon his arrest. It is unknown if any other occupants of the home had an additional key to the Ford

Explorer, access to the Ford Explorer, or drove the Ford Explorer at any point in time prior to the execution of the search warrant. Furthermore, it is unknown to whom the vehicle was registered.

In summary, a total of one (1) handgun was found on Mr. Magana's person during his arrest; one (1) handgun was found in the bedroom next to his during execution of the search warrant; and four (4) handguns/rifles were found in the Ford Explorer, for a total of six (6) weapons. (*Id.* at pg. 42.) This appears supported by the photo shown by agents to Mr. Varela during his interview, which depicted a total of six (6) weapons that had been recovered. (Bates at pg. 141.) Thus, when taking into account the two firearms that were the subject of the straw purchase in this case, at most, there are a total of eight (8) weapons up for debate[3].

First, Mr. Magana does not dispute that two firearms were purchased by a third party on his behalf in this present case. Additionally, for purposes of argument only, defense counsel does not dispute that Mr. Magana was in possession of a firearm during his arrest on March 10, 2021[4]. However, Mr. Magana disputes that the handgun found on his person during his arrest ten (10) months prior to the straw purchase in this case, was part of the same course of conduct, common scheme or plan. Furthermore, he denies that he had any knowledge of the presence of weapons found inside the Ford Explorer or the bedroom adjacent to his.

Mr. Magana was just three months past his eighteenth birthday at the time the search warrant was executed in March of 2021, and he was living in a home with eight (8) other individuals. Most of those individuals were adults, and all but one was of driving age. Thus, nearly everyone living in the home had access to the Ford Explorer and the ability to drive it. Mr. Magana was not arrested while driving the Ford Explorer and it's entirely unknown

[3] Defense counsel was provided with the discovery related to relevant conduct after the PSR had been drafted. To date, defense counsel has not received a copy of the search warrant return. Therefore, if counsel is missing any information related to the number of weapons recovered, defense counsel reserves the right to correct any errors at sentencing.

[4] Because the execution of the search warrant is an ongoing case in Maricopa County Superior Court, case number CR2021-109811-001, Mr. Magana invokes his right to remain silent. Therefore, any arguments presented by defense counsel as they relate to the application of relevant conduct in this case are provided solely to facilitate discussion.

when he last drove the vehicle or who drove the vehicle last. There is insufficient evidence to support the assertion that Mr. Magana had knowledge that weapons were inside the Ford Explorer. Furthermore, Mr. Magana was arrested while driving a Honda Accord, which suggests that even if he had a key to the Ford Explorer, this was not necessarily a vehicle he used often or at all.

Similarly, Mr. Magana denies that he had knowledge of the presence of the weapon found inside the bedroom adjacent to his. No firearms were found inside his bedroom and Mr. Magana is not responsible for the conduct of other adults, particularly if he's unaware of their actions. If Mr. Magana, an alleged prohibited possessor, was arrested with a firearm on his person, presumably, he had no knowledge that he was under surveillance or that the police were going to execute a search warrant on the day of his arrest. Therefore, if the firearm in the adjacent bedroom actually belonged to him, it would make more sense to be in his own bedroom. Given the circumstances, it seems unlikely that this firearm belonged to Mr. Magana as he had no reason to hide it in a different room.

Lastly, the search warrant was executed in March of 2021, yet the straw purchase in this case occurred in January of 2022, with his codefendant, Mr. Varela. There is nothing to suggest that the additional recovered firearms were related to the overall scheme or plan crafted between Mr. Magana and Mr. Varela. There's no indication that Mr. Varela had knowledge of the existence of these weapons at the time they were obtained, nor is there evidence that he participated in obtaining them. Given the gap in time between the recovery of the weapons during the execution of the search warrant in 2021, and the straw purchase in 2022, coupled with the different parties involved and Mr. Magana's arguable lack of knowledge, the additional weapons should not be attributed to the current offense as relevant conduct and his sentence should not be increased on this basis.

Conclusion:

In conclusion, Mr. Magana objects to the application of USSG § 2K2.1(b)(1)(B) to increase his base offense level by an additional four levels. Mr. Magana is responsible for the straw purchase of two firearms on January 10, 2022, which resulted in a base offense level of

twenty (20). For the reasons stated above, the additional four-level increase is inapplicable and Mr. Magana respectfully requests that the Court sustain his objection.

Respectfully submitted on this 16th day of October, 2022.

By: *s/Kaitlin S. Verdura*
Kaitlin S. Verdura
Attorney for Defendant

Copy of the foregoing transmitted
by ECF for filing October 16, 2022, to:

CLERK'S OFFICE
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

BRETT DAY
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408

REBECCA BRIGGS
U.S. Probation Officer
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

By: *s/Kaitlin S. Verdura*